**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED

2008 JUN -4  PM 4: 24

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

| | | |
|---|---|---|
| Robert Wiese, | § | |
| Plaintiff, | § | |
| | § | Civil Action No. |
| *v.* | § | |
| The City of Austin, Texas, | § | |
| and, | § | **A O8CA   449 SS** |
| Will Wynn, | § | |
| and, | § | |
| Carlos Cardona, | § | |
| and, | § | |
| Chris Dixon, | § | |
| and, | § | |
| Melissa Poole, | § | |
| Defendants. | § | |

### Complaint

To the Honorable United States District Judges for the Western District:

NOW COMES Plaintiff Robert Wiese[1] before this Honorable Court through his counsel of record, Donald T. Cheatham, complaining respectfully against the Defendants City of Austin, Texas,[2] Mayor Will Wynn, Carlos Cardona,[3] Chris Dixon,[4] and Melissa Poole,[5] averring as follows:

#### JURISDICTION, VENUE AND PARTIES:

1.     This is a civil action arising under the laws of the United States and other provisions of Texas law. Plaintiff brings this case pursuant to the Americans with Disabilities Act of 1990,[6] codified at 42 United States Code

---

[1]  Hereinafter referenced as, "Plaintiff".
[2]  "Austin".
[3]  "Mr. Cardona"
[4]  "Mr. Dixon"
[5]  "Ms. Poole"
[6]  "ADA"

Annotated[7] §§ 12101 *et seq*uitur, which incorporates by reference the Civil Rights Act of 1964, codified at 42 U.S.C.A. §§ 2000e *et sequitur* and the Civil Rights Act of 1991, codified at 42 U.S.C.A. § 1983, the Rehabilitation Act of 1973, codified at 29 U.S.C.A. § 794, as well as, the Veterans Disability and Rehabilitation Act, codified at 38 U.S.C.A. § 4323.

2.     This Court has jurisdiction in this case pursuant to 28 U.S.C.A. § 1331 and 1343.

3.     Plaintiff also invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 over Plaintiff's state claims against Defendants for common law violations and state law claims under Vernon's Texas Code Annotated,[8] Labor Code § 21.051, as the common law and state law claims form part of the same case or controversy.

4.     Venue is proper and lies in the Western District of Texas, Austin Division under 28 U.S.C.A. § 1391(b) and 42 U.S.C.A. § 2000e-5(f)(3) for all causes of action stated herein, as the acts and transactions herein alleged and complained of, as well as, all of the events or omissions giving rise to the claims occurred, as the bases for federal claims, within the boundaries of that District and Division, as well as, because the individual Defendants, Mr. Dixon, Mr. Cardona and Ms. Poole reside and Austin is situate within that District and Division.

5.     Plaintiff timely submitted a charge of discrimination on the basis of his disabilities to the Equal Employment Commission[9] through the Texas Workforce Commission, Civil Rights Division,[10] regarding his civil rights and veterans rights grievances against the Defendants, concerning his

---

[7] "U.S.C.A."
[8] "V.T.C.A."
[9] "EEOC"
[10] "TWC"

complaints for violations of the referenced federal statutes, charging that the Defendants discriminated against Plaintiff due to Plaintiff's disabilities. Plaintiff attaches Plaintiff's October 11th 2007 charging papers to the TWC marked as Exhibit "A", which through this reference Plaintiff hereby incorporates herein their entireties.

6.     TWC assumed jurisdiction over Plaintiff's charges pursuant to 42 U.S.C.A. § 2000e and in following TWC served notice of the charges on Austin, pursuant to the statutory requirements.

7.     On March 6th 2008, TWC issued to Plaintiff a Notice of Right to Sue the Defendants, which Plaintiff attaches hereto marked as Exhibit "B", which through this reference Plaintiff hereby incorporates herein its entireties. Plaintiff is filing this suit within 90 days of his receipt of the Notice of Right to Sue from TWC.

8.     Thereby, Plaintiff timely has complied with all conditions precedent to bring and initiate this action against these named Defendants.

9.     This is also an action against Defendants for their wrongful discharge of Plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C.A. § 12101, the Rehabilitation Act of 1973, 29 U.S.C.A. § 794, and the Veterans Disability and Rehabilitation Act, 38 USCA § 4323, when the individual Defendants caused and the municipal Defendant wrongfully discharged Plaintiff in violation of those federal statutes in September of 2007, which was the last time that Plaintiff received any pay from Austin.[11]

10.     This is also a suit for Defendants' retaliation against Plaintiff for Plaintiff's "whistle Blowing" against another City of Austin employee(s), pursuant to V.T.C.A., Government Code § 554.003.

---

[11] The last time Plaintiff heard anything from Austin or any of its officials concerning his employment with Austin was in December of 2007.

11.    Plaintiff is an adult citizen of the United States of America and the State of Texas, as well as, a domiciled resident of this state. Service of Process of pleadings, instruments, discovery and other documents is hereafter effective pursuant to applicable provisions of the Federal Rules of Civil Procedure by delivering the same to Plaintiff's counsel of record, Donald T. Cheatham at 604 A West 9th Street, Austin, Texas 78701.

12.    Defendant City of Austin, Texas is a municipal corporation formed under the laws of the state of Texas. Service of Process is effective by the delivery of the Summons issued in this case, as well as, copies of pleadings, discovery, instruments and other documents upon the Mayor of the City of Austin, the Honorable Will Wynn, through United States Postal Service, 1st Class US Mail, Certified, Return Receipt Requested, postage pre-paid at his mailing address P. O. Box 1088, Austin, Texas 78767.

13.    Defendant Will Wynn is an adult citizen of the United States of America and the State of Texas, as well as, a domiciled resident in this state. Service of Process is effective by the delivery of the Summons issued in this case, as well as, copies of pleadings, discovery, instruments and other documents upon this Defendant at his work address P. O. Box 1088, Austin, Texas 78767. Plaintiff sues Mayor Wynn in his official capacity.

14.    Defendant Carlos Cardona is an adult citizen of the United States of America and the State of Texas, as well as, a domiciled resident in this state. Service of Process is effective by the delivery of the Summons issued in this case, as well as, copies of pleadings, discovery, instruments and other documents upon this Defendant at his work address, the City of Austin Department of Public Works, P.O Box 1088, Austin, Texas, 78767. Plaintiff sues Mr. Cardona in his official and individual capacities.

4

15.    Defendant Chris Dixon is an adult citizen of the United States of America and the State of Texas, as well as, a domiciled resident in this state. Service of Process is effective by the delivery of the Summons issued in this case, as well as, copies of pleadings, discovery, instruments and other documents upon this Defendant at his work address, the City of Austin Department of Public Works, P.O. Box 1088, Austin, Texas, 78767. Plaintiff sues Mr. Dixon in his official and individual capacities.

16.    Defendant Melissa Poole is an adult citizen of the United States of America and the State of Texas, as well as, a domiciled resident in this state. Service of Process is effective by the delivery of the Summons issued in this case, as well as, copies of pleadings, discovery, instruments and other documents upon this Defendant at her work address, the Human Resources Department[12] for the City of Austin, P.O. Box 1088, Austin, Texas, 78767. Plaintiff sues Ms. Poole in her official and individual capacities.

### Facts

17.    Plaintiff repleads, restates and incorporates the factual averments in ¶¶ 1 through 16 hereinabove pled, as well as, those hereinafter pled, as though originally pled herein this portion of this Compliant.

18.    Plaintiff is a disabled Iraqi war veteran, having sustained injuries to his back, knees and ankles, as well as, Post Traumatic Stress Syndrome and chronic depression, as the result of his valuable and valiant military service.

19.    Plaintiff was honorably discharged from the Armed Forces of the United States of America on February 16th 2004. Plaintiff was designated as a disabled veteran having suffered injuries in the course of his service to

---

[12] "HR"

this country in the Armed Forces of the United States. The United States Department of Veteran Affairs lists Plaintiff as a disabled veteran.

20.     At all times relevant and pertinent hereto Austin and Defendants were aware that Plaintiff was disabled and a disabled Iraqi war veteran.

21.     Austin Employed Plaintiff between December of 2005 and September of 2007 in their Department of Public Works, Transportation Division, Signals Unit, commencing with training him as a Signal Tech Trainee.

22.     Plaintiff always performed his employment duties in a skillful, dutiful, professional and competent manner, while in the employ of Austin.

23.     At all times relevant and pertinent hereto, Austin employed Mr. Dixon as Plaintiff's supervisor.

24.     At all times relevant hereto, Austin employed Mr. Cardona as Plaintiff's and Mr. Dixon's supervisor.

25.     At all times relevant hereto, Austin employed Ms. Poole in their HR and Austin assigned Ms. Poole as the Austin HR official in charge of matters relating to Plaintiff.

26.     Plaintiff always received above average employment reviews, while he was Austin's employee.

27.     In May of 2006, Mr. Dixon commenced a course of harassing misconduct whereby he intended such animus to lead to Plaintiff's voluntarily terminating his employment with Austin. Mr. Dixon began his harassment by cursing at Plaintiff often and publicly ridiculing Plaintiff for being disabled. In early May of 2006 Plaintiff's mother was diagnosed with a terminal disease. Due to Plaintiff's work schedule, the only time that he could visit with his mother was on weekends. At this time Mr. Dixon began

to harass Plaintiff for not working on Saturdays, even though he was well aware of Plaintiff's mother's debilitated and declining medical and physical condition. Although Plaintiff could not afford to loose the pay, as his family is and was then dependent upon his support, Plaintiff considered requesting leave under the Family Medical Leave Act. Plaintiff instead determined it best to confront Mr. Dixon. Following this, Mr. Dixon commenced to call any other employee who didn't or wouldn't work on Saturdays "Wiese."

28.    In June Mr. Dixon continued to harass Plaintiff and on one occasion openly called Plaintiff a "Worthless, disabled [expletive deleted]." He also continued to call other employees "Wiese" if they made any mistake or didn't or wouldn't work Saturdays.

29.    Mr. Cardona was at all times relevant and pertinent hereto Mr. Dixon's and Plaintiff's supervisor.

30.    In July 2006 Plaintiff went to Mr. Cardona about Mr. Dixon's harassment, derision and name calling of Plaintiff, which Plaintiff was receiving from Mr. Dixon on almost a daily basis. Mr. Cardona did nothing about this report, instead stating to Plaintiff, that Plaintiff was overly sensitive and that Mr. Dixon was merely teasing Plaintiff.

31.    In August of 2006, Mr. Dixon somehow learned that Plaintiff had longed suffered and was at that time continuing to suffer from Attention Deficit Disorder, for which malady Mr. Dixon discovered Plaintiff was being medicated. Following Mr. Dixon's discovery of such of Plaintiff's continuing medical difficulties and ailments, as well as, his prescribed medication for such, Mr. Dixon began yelling loudly at Plaintiff in front of the other employees with such retorts as: "Pull your head out of your [expletive deleted] ... didn't you take your [expletive deleted] meds?" During a safety meeting Mr. Dixon joked to the other employees that

Plaintiff's disability was caused "… Because Wiese tripped in the buffet line …" Plaintiff, attempting to defuse this attack, retorted: "Yea … and I laughed all the way to the bank." Mr. Dixon followed this with his own retort: "Well Wiese … At least we can all run to the bank … You cripple…"

32.    A few days later several of Plaintiff's coworkers approached him, saying that Mr. Dixon had told them, that he had made a mistake in hiring Plaintiff, with words to the effect: 'I made a mistake. I wish I had known that he was such a cripple when I interviewed him. If I had known, I never would have hired his worthless, disabled [expletive deleted].'

33.    In September of 2006, Plaintiff spoke with Ms. Poole and one David Aguilara in Austin's HR.  Plaintiff filed a formal complaint with Austin's HR regarding Mr. Dixon's discrimination against him due to his disabilities and concerning Mr. Cardona's refusal to take any remedial action on Plaintiff's behalf regarding Mr. Dixon's discriminatory misconduct against Plaintiff. Plaintiff requested of these two HR officials at that time that they establish a buffer zone between Mr. Dixon and Plaintiff, in order to prevent any further discrimination by Mr. Dixon against Plaintiff. Mr. Aguilara's reply to this request was: "Robert, you can defend yourself if he attacks you…", intimating and clearly suggesting that Plaintiff's only recourse was to respond physically to Mr. Dixon's insults and open discrimination against him due to his disabilities. Plaintiff stressed to both Ms. Poole and Mr. Aguilara in reply to Mr. Aguilara's suggestion that Plaintiff in no manner would act violently against Mr. Dixon or anyone else at Austin. Plaintiff told these HR officials that Plaintiff did not trust Mr. Dixon and that Mr. Dixon would not act any differently as to him or his disabilities, as well as, that Plaintiff felt what was needed was such a buffer zone. Both Ms. Poole and Mr. Aguilara told Plaintiff that they were unable

to establish such buffer zone between Mr. Dixon and Plaintiff or grant him any other accommodation. Neither did anything to alleviate the Plaintiff's hostile workplace environment, which existed due to Mr. Dixon's discriminatory practices and conduct directly aimed at Plaintiff with animus.

34.    In October of 2006, Plaintiff was called in for a random drug test. Plaintiff tested positive for "amphetamines." Plaintiff explained to the testing physician that his treating physician formally had prescribed the drug Adderall for his Attention Deficit Disorder. Austin in the course of this random drug test confirmed that Plaintiff's treating physician had prescribed the drug for treatment of Plaintiff's Attention Deficit Disorder.

35.    During October of 2006, Plaintiff reported to Ms. Poole at HR that Mr. Dixon had been intoxicated on the job, which posed a danger to Plaintiff and others at Austin's workplace. HR's Ms. Poole in response told Plaintiff that he should report to HR immediately the next time that Mr. Dixon came into work intoxicated. A few days later, when Mr. Dixon showed up for work intoxicated again, Plaintiff reported this to HR's Ms. Poole. No one at Austin HR or otherwise at Austin ever investigated Plaintiff's report of Mr. Dixon's intoxication at work, which Plaintiff believed and believes posed a threat to Plaintiff and to others at Austin's workplace.

36.    The fact of Mr. Dixon's repeated intoxication at work posing a threat to Plaintiff created further a hostile workplace environment for Plaintiff and others in Austin's Public Works' employ.

37.    Mr. Dixon's repetitious public derogatory comments about Plaintiff and specifically his disabilities, as well as, Mr. Dixon's repeated intoxication at work created both a subjective and objective hostile workplace environment for Plaintiff, especially when coupled with Austin's

HR's and Ms. Poole's refusal and failure to intercede and to do anything at all to alleviate the stress, discord and tension that Mr. Dixon's misconduct caused to Plaintiff in Austin's workplace due to his disabilities.

38.     In August 2006, Ms. Poole completed her investigation of Plaintiff's complaints about Mr. Dixon and Mr. Cardona. Plaintiff in following then met with Ms. Poole in her office. Ms. Poole informed Plaintiff that Ms. Poole found that all of Plaintiff's allegations concerning Mr. Dixon and Mr. Cardona were in fact true. Plaintiff again requested a buffer zone between Mr. Dixon and himself, or that she provide Plaintiff with some other suitable accommodation. Ms. Poole repeated that establishing such a buffer zone was not possible. Ms. Poole did not suggest any other accommodation. Plaintiff then requested that he be transferred out from under Ms. Dixon and Ms Cardona's supervision. Ms. Poole informed Plaintiff that such a transfer as an accommodation also was not possible.

39.     Austin refused to grant Plaintiff any accommodations in his work situation because of any of his disabilities, as required under law.

40.     Austin granted no accommodation to Plaintiff at any time.

41.     Austin did nothing at any time to alleviate the hostile workplace environment that Mr. Dixon created, as well as, that both Mr. Cardona and Ms. Poole allowed to exist and continued to allow to exist after Plaintiff had informed them of the existence of such a hostile workplace environment.

42.     In December of 2006, both Mr. Dixon and Mr. Cardona were placed on six (6) months probation and were required to attend anger management courses, as a direct and proximate result of HR's investigation of Plaintiff's complaints.

43.     During December of 2006, Plaintiff inquired of Mr. Cardona concerning the raise that he had been promised initially at the time when

Austin hired Plaintiff. Mr. Cardona informed and promised Plaintiff when he was hired that he would receive a raise after six (6) months and a promotion to Signal Tech 1, if he had adequately learned from his training and had adequately performed his work duties in that period.

44.    Between December of 2005 and June of 2006, Plaintiff's "probationary" period of training and employment, Plaintiff more than satisfactorily completed his training and more than adequately performed his work duties, as required of him.

45.    By December of 2006, Plaintiff had been working for Austin in its Public Works Department for one (1) year. No one at Austin as of that time or in addressed the issues of the promised promotion and raise.

46.    Plaintiff addressed the issue of his promised promotion and raise with his supervisor, Mr. Cardona in December 2006. Mr. Cardona then informed Plaintiff that he would have to discuss the promised promotion and raise with Mr. Dixon, Mr. Rick Adams, Mr. Ben Henson, Mr. Dan Henson, and Mr. James Paxson, who were all supervisors over Plaintiff, about Plaintiff's progress in training and performance on the job.

47.    Plaintiff did not hear back form Mr. Cardona concerning his inquiry regarding the promised promotion and raise that Plaintiff raised with Mr. Cardona in December 2006.

48.    At no time relevant or pertinent hereto did Mr. Cardona or anyone else at Austin in a supervisory position over Plaintiff for that matter deny that Mr. Cardona had promised Plaintiff when he began his employment with Austin as an inducement to Plaintiff to enter into such employment either the referenced promotion or raise.

49.    When Plaintiff had not heard back from Mr. Cardona concerning his promised promotion and raise as of January of 2007, Plaintiff

went to HR and inquired of Ms. Poole concerning his previously promised promotion and raise, then three (3) months overdue.

50.    Plaintiff also during that January 2007 visit to HR requested of Ms. Poole a copy of the investigation file on his complaints about Mr. Dixon and Mr. Cardona.

51.    Ms. Poole acting as the HR officer regarding matters concerning Plaintiff informed Plaintiff that they would note his concerns and look into his requests, as well as, look into the matter concerning the promised promotion and raise.

52.    Plaintiff never heard from Ms. Poole or anyone in HR regarding any of these matters again.

53.    At no time during Plaintiff's employ at Austin did Plaintiff ever receive either the promised promotion or raise, in spite of the fact that Plaintiff more than adequately learned from and in his training, as well as, that Plaintiff more than adequately and in fact quite proficiently performed all of his work duties while in Austin's employ.

54.    Plaintiff never received a copy of the investigation file that he had requested from Ms. Poole and Austin HR and to which he was entitled to receive under both federal and Texas law.

55.    In February 2007, Plaintiff was again randomly drug tested. The test came back again positive for amphetamines. Once again Plaintiff informed the testing physician concerning his prescription for Attention Deficit Disorder. The testing physician informed Plaintiff that he would take care of the matter.

56.    Although Plaintiff had received such assurances from the testing physician at the February 2007 drug test that he would look into the matter of the prescription for the treatment of Plaintiff's Attention Deficit

Disorder, of which all of Defendants as of that time were aware or should have been aware, as a direct and proximate result of the confirmation of the existence of that prescription after the first October 2006 drug test referenced, the matter of the positive result and the existence of the prescription was neither reconciled nor taken care of after the February 2007 drug test, which resulted directly and proximately in many employment problems and difficulties for Plaintiff after that February 2007 drug test.

57.    In March of 2007, Mr. Lupe Alvarado, Plaintiff's supervisor, and Mr. Cardona summoned Plaintiff to their office. Mr. Alvarado and Mr. Cardona informed Plaintiff that he had tested positive for amphetamines in the February 2007 drug test and that Plaintiff was to be suspended without pay for ten (10) days for that infraction.

58.    Plaintiff protested, informing them at that time that he had a prescription for drug treatment of his Attention Deficit Disorder, which was explanatory for the positive finding in the random February 2007 drug test, as it had been after the October 2006 drug test.

59.    Plaintiff asked that Ms. Alvarado and Mr. Cardona call his treating physician about the prescription. Mr. Alvarado and Mr. Cardona refused to listen and escorted Plaintiff out of their office. Neither Mr. Alvarado nor Mr. Cardona did anything to confirm the existence of Plaintiff's prescription for his treatment of Attention Deficit Disorder.

60.    As a direct and proximate result of Mr. Alvarado's and Mr. Cardona's acts of commissions or omissions regarding confirmation of the existence of Plaintiff's prescription for his treatment of his Attention Deficit Disorder, the order for Plaintiff's suspension unreasonably was left to stand, which resulted in Plaintiff's unjust, unjustified and unjustifiable suspension.

61.     Plaintiff had not been back at work more than even a week following his suspension, before he was called in for another random drug test in March 2007. Plaintiff again tested positive in this drug test for amphetamines. Plaintiff again gave the testing physician the information regarding his prescription for his treatment of his Attention Deficit Disorder.

62.     Plaintiff believed and believes that the March 2007 drug test was retaliatory by his supervisors for the complaints that he had previously lodged with HR and Ms. Poole.

63.     In April of 2007, Plaintiff missed a step, slipped, fell and injured his back on the job. Plaintiff was placed on administrative leave. Mr. Alvarado instructed Plaintiff to go see a chiropractor for treatment. The chiropractor diagnosed Plaintiff with torn cartilage in his back. Plaintiff as a result was required to go on workers' compensation.

64.     In July 2007, Plaintiff met with Ms. Poole, who stated she was placing Plaintiff on a return to work program. During this meeting, Ms. Poole told Plaintiff that Austin HR would find him a job somewhere other than the Signal Department and that it would not be a promotion. Plaintiff protested stating to Ms. Poole that such action would mean that Plaintiff would have to start over in his employment with Austin. Ms. Poole informed Plaintiff that that was just how it had to be. Ms. Poole informed Plaintiff that he in the alternative could return to his original job as a Signal Tech Trainee with Public Works on light duty.

65.     Plaintiff returned to his original job as a Signal Tech Trainee following his meeting with Ms. Poole in July 2007.

66.     Shortly after doing this, at a safety meeting, Mr. Mozabar, another of Plaintiff's supervisors, stated in front of the other employees that,

"Wiese could not come back … We do not have a light duty position for Mr. Wiese."

67.    This action on the part of Austin in not allowing him to return to light duty in the Public Work's Signal Department constituted Austin's disparate treatment of Plaintiff, as every other Austin signal employee who had ever been injured on the job had been placed on light duty.

68.    Although Austin never informed Plaintiff that Austin had terminated his employment, HR displaced Plaintiff as an Austin employee effectively terminating him following his injuries in April 2007, as he went on workers' compensation and then Austin never called him back for work.

69.    Plaintiff has never heard back from Austin concerning any employment position. This has resulted in effect in Plaintiff not being employed since the injuries he suffered in April 2007 through to the present.

70.    The acts of commission and omission committed against Plaintiff in Austin's and the other Defendants' treatment of Plaintiff in his employment regarding his known and established disabilities constituted discriminatory violations of both the ADA and the Veterans Disability and Rehabilitation Act.

71.    Plaintiff did not learn that he would not be reemployed at Austin following his administrative leave for the injuries he suffered in April of 2007, when he went on workers' compensation, until the safety meeting in July 2007 referenced.

72.    When Plaintiff went on workers' compensation following his injuries in April of 2007, Ms. Poole informed Plaintiff that she would be Plaintiff's intermediary with Austin's workers' compensation insurance carrier. When Plaintiff complained to Ms. Poole on at least five (5) occasions of some difficulties with that carrier not providing necessary

medical treatment, in following, Ms. Poole did nothing to assist Plaintiff as she had stated she would.

73.     Plaintiff following the July 2007 safety meeting referenced telephoned Ms. Poole concerning his status on four (4) separate occasions inquiring of her what the next steps would be regarding restoring Plaintiff to his employ at Austin. Ms. Poole never called Plaintiff to inform him of such.

74.     Plaintiff then, when he did not hear back from HR's Ms. Poole following his several calls to her referenced, directed an email to Austin's Public Works' Director addressing his treatment following the July 2007 meeting and his concerns regarding his continued employment at Austin.

75.     The acts of commission and omission hereinabove stated and pled, *inter alios*, constituted acts and a pattern of unlawful discrimination against Plaintiff due to his disabilities, violative of federal and state law.

76.     The acts of commission and omission herein bove stated and pled, *inter alios*, constituted acts and a pattern of unlawful retaliation against Plaintiff for his raising of and making complaints concerning Mr. Dixon and Mr. Cardona's treatment of Plaintiff, violative of federal and state law.

77.     Austin had a policy to allow the acts of commission and omission of discrimination as hereinabove pled to occur and to continue to occur regarding the conditions of those in Austin's employ, who possessed disabilities, such as Plaintiff possessed and possesses.

78.     Austin had a policy to allow the acts of commission and omission of discrimination as hereinabove pled to occur and to continue to occur regarding the conditions of those in Austin's employ, who were veterans possessed with disabilities, such as Plaintiff possessed and possesses.

79.    Austin had an established custom and allowed such a custom to grow and continue to allow the acts of commission and omission of discrimination as hereinabove pled to occur and to continue to occur regarding the conditions of those in Austin's employ, who possessed disabilities, such as Plaintiff possessed and possesses.

80.    Austin had a custom and allowed such a custom to grow and continue to allow the acts of commission and omission of discrimination hereinabove pled to occur and to continue to occur regarding the conditions of those in Austin's employ, who were veterans possessed with disabilities, such as Plaintiff possessed and possesses.

81.    At all times relevant hereto Austin was receiving federal funds for its operations and for matters for which Plaintiff acted as Austin's employee. As a result, the Defendants fall within the strictures of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794.

82.    Plaintiff is informed, believes and alleges that pursuant to 42 U.S.C.A. §§ 2000e *et sequitur*, Plaintiff is entitled to reinstatement of his position as a Signal Tech 1, training, the provision of reasonable accommodation for his disabilities, assistance for his rehabilitation or placement in some other equivalent position, back pay, attorneys' fees and costs for the prosecution of this action, and an award for his damages.

83.    Plaintiff is a "qualified individual with a disability" as that term is defined in ADA, 42 U.S.C.A. § 12111(8) and is also entitled to rehabilitation under the provisions of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 for his disabilities.

84.    The herein above delineated acts of commission and ommission Defendants committed constitute discrimination against Plaintiff, as a qualified individual with a disability by:

(i) limiting and classifying Plaintiff to and in a demoted pay position, which adversely affected his job opportunities and status because of his disabilities;

(ii) utilizing standards and criteria of administration in designating and classifying Plaintiff in a position not suited for his actual training and failing to give him training, as well as, discriminating against Plaintiff on the basis of his disabilities and needs for rehabilitation; and,

(iii) refusing him reasonable accommodation to Plaintiff's known physical and mental limitations by assigning him to a position as a Signal Tech Trainee the second time, without light duty assignment following his on the job injury, so that Plaintiff could not advance and fulfill his job requirements, within the limitations as prescribed by his medical doctors or by assigning him to some equivalent position, the performance of which could be met within the limitations as prescribed by his medical doctors.

85.    Plaintiff has met the prerequisites for filing suit under the ADA and under Title VII.  Plaintiff filed a Charge of Discrimination ("Charge") on or about October 11th 2007 with TWC, alleging that he had been discriminated against in violation of the ADA and Title VII on the bases of disabilities.

86.    Plaintiff has been damaged by Defendants' violations of the ADA inasmuch as Plaintiff:

(1) was without a job effectively between April 2007 and the present;

(2) the manner in which Defendants discharged Plaintiff effectively precluding him from finding alternative employment; and,

(3) has been denied access to certain benefits to which he was entitled under Austin's benefit plans.

87.    As a direct and proximate result of Defendants' actions, omissions and commissions, Plaintiff has been caused to suffer damages for which he herein sues. Plaintiff also seeks an award of attorneys fees and costs associated with the bringing of this action. Plaintiff also seeks that under the applicable provisions of law that this Honorable Court grant him prospective equitable relief against Defendants to correct their discriminatory employment practices.

## Count I: DISCRIMINATION

88.    Plaintiff repleads, restates and incorporates the factual averments in ¶¶ 1 through 87 hereinabove pled, as well as, those hereinafter pled, as though originally pled herein this Count I of this Compliant.

89.    As a result of Defendants' conduct, Plaintiff was discriminated against on the bases of his defined disabilities and denied rehabilitation in violation of federal and state law.

90.    Because Defendants treated Plaintiff disparately and differently than they treated other employees who were *not* disabled and who were not disabled veterans, Defendants intentionally engaged in unlawful employment practices, because Plaintiff was disabled and a disabled veteran.

91.    Defendants by and through Defendants' agents, discriminated against Plaintiff, as described above, in violation of his rights under 42 U.S.C.A. § 2000e (2)(a) and 29 U.S.C.A. § 623, as well as, V.T.C.A, Labor Code § 21.051, *et sequitur,* as well as, in violation of the Americans with Disabilities Act, the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 and the Veterans Disability and Rehabilitation Act, 38 U.S.C.A. § 4323.

92.    Defendants by and through Defendants' agents, intentionally discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified

Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's disability and need for rehabilitation in violation of the ADA, 42 U.S.C.A. § 2000e (2) (a) and 29 U.S.C.A. § 623, the V.T.C.A., Labor Code § 21.051, *et sequitur*, the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 and the Veterans Disability and Rehabilitation Act, 38 U.S.C.A. § 4323.

93.     Plaintiff states that Defendants' conduct violated Plaintiff's civil rights under 42 U.S.C.A. § 1983 and 42 U.S.C.A. § 1985, as well as, V.T.C.A., Labor Code § 21.051, *et sequitur*, as well as, in violation of the ADA, the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 and the Veterans Disability and Rehabilitation Act, 38 U.S.C.A. § 4323.

94.     In support of this cause of action, Plaintiff states the following: Plaintiff alleges that Defendants discriminated against Plaintiff on the basis of disability and denied him rehabilitation with malice or with reckless indifference to Plaintiff's federal and state-protected rights.

95.     Austin, its officials, representatives, agents, or employees, and individual Defendants, pursued a policy or custom which caused Plaintiff to be subjected to a denial of rights guaranteed him under the United States and Texas Constitutions. More particularly, Plaintiff was terminated because Plaintiff spoke out against and reported illegal activities in violation of his federally protected First Amendment constitutional rights.

96.     Plaintiff's speech in reporting these illegal activities to other of Austin's officials was speech protected by the First Amendment to the United States Constitution, as well as, the Constitution of the State of Texas Article 1, § 8, as the activities were matters of public concern.

97.     Plaintiff's primary motive in making such reports was as a citizen, not as Austin's employee. Such speech and reporting was a

motivating factor in the Defendants' decision to terminate Plaintiff from Plaintiff's employment with Austin. In addition, there was no separate, independent factor justifying Plaintiff's termination or the manner that Defendants treated Plaintiff, while he was Austin's employee.

98.     Austin's activities in terminating Plaintiff for exercising Plaintiff's constitutional rights resulted in injuries to Plaintiff. Defendants took such actions, which may include a conspiracy, specifically to deprive Plaintiff of Plaintiff's equal protection of the law and committed such actions under the color of State law.

99.     Further, the individual Defendants, Mr. Dixon, Mr. Cardona and Ms. Poole's conduct in causing the termination Plaintiff's employment with Austin was malicious, wanton, oppressive, or in reckless disregard of Plaintiff's rights. Consequently, Plaintiff seeks exemplary or punitive damages, where available under law.

100.    As a direct and proximate result of Defendants' actions, omissions and commissions, Plaintiff has been caused to suffer damages, for which he herein sues. Plaintiff also seeks an award of attorneys fees and costs associated with the bringing of this action. Plaintiff also seeks that under the applicable provisions of law that this Honorable Court grant him prospective equitable relief against Defendants to correct their discriminatory employment practices.

## Count II: Discrimination and Disparate Treatment Against a Disabled Veteran

101.    Plaintiff repleads, restates and incorporates the factual averments in ¶¶ 1 through 100 hereinabove pled, as well as, those hereinafter pled, as though originally pled herein this Count II of this Compliant.

102.   Because as hereinabove pled Defendants discriminated against Plaintiff, who is a classified disabled veteran, Defendants have each violated the terms the Veterans Disability and Rehabilitation Act, 38 USCA § 4323.

103.   The Veterans Disability and Rehabilitation Act, 38 USCA § 4323 (j) makes Austin a "private employer" under this statute.

104.   The Veterans Disability and Rehabilitation Act, 38 USCA § 4323 provides for the following remedies, *inter alia*:

"… (1) …
**(A)** The court may require the employer to comply with the provisions of this chapter.
**(B)** The court may require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter.
**(C)** The court may require the employer to pay the person an amount equal to the amount referred to in subparagraph (B) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful.
**(2)(A)** Any compensation awarded under subparagraph (B) or (C) of paragraph (1) shall be in addition to, and shall not diminish, any of the other rights and benefits provided for under this chapter…
**(e) Equity powers.**--The court may use its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter…
**(h) Fees, court costs.--(1)** No fees or court costs may be charged or taxed against any person claiming rights under this chapter.
**(2)** In any action or proceeding to enforce a provision of this chapter by a person under subsection (a)(2) who obtained private counsel for such action or proceeding, the court may award any such person who prevails in such action or proceeding reasonable attorney fees, expert witness fees, and other litigation expenses…"

105.   Plaintiff claims that Austin discriminated against him and treated his disparately as a disabled veteran.

106.   As a direct and proximate result of Austin's discrimination

against Plaintiff and disparate treatment as a disabled veteran, Plaintiff has suffered damages, for which he herein sues.

107.  Plaintiff prays all relief and damages available under The Veterans Disability and Rehabilitation Act, 38 USCA § 4323, as hereinabove and otherwise stated and delineated.

## Count III: RETALIATION

108.  Plaintiff repleads, restates and incorporates the factual averments in ¶¶ 1 through 107  hereinabove pled, as well as, those hereinafter pled, as though originally pled herein this Count III of this Compliant.

109.  As a result of Defendants' conduct, Plaintiff was subject to wrongful termination, which constituted retaliation in violation of federal and state law.

110.  Austin hired Plaintiff to work as a Public Works Signal Technician. Plaintiff assumed and had a wide range of responsibilities in Austin's Public Works Signal Department, while he was in Austin's employ.

111.  Throughout his employment, Austin rated Plaintiff for his outstanding job performance on numerous job performance reviews, until the end of his employment, when Ms. Poole and Mr. Alvarado used pretext of poor job performance as the rationale to discharge Plaintiff from his employment at Austin.

112.  As a result of Plaintiff's work ethic and performance, Plaintiff achieved much cost savings for Austin.

113.  Plaintiff received superior ratings on his training and for his job performance reviews.

114.   Until the last days of his employment following his complaints internally at the Austin, Plaintiff never received a negative review.

115.   Plaintiff was and is a "person," who performed services for compensation and benefits under an employment contract for and with Austin, and therefore was Austin's public employee, as a matter of law.

116.   Defendants terminated Plaintiff's employment, who, in good faith, reported violations of law to appropriate superiors within that public agency. Austin's action in terminating Plaintiff under these circumstances constitutes unlawful retaliation in violation of V.T.C.A., Texas Government Code § 554.002, the Texas "Whistleblower" Act.

117.   Mr. Dixon further retaliated against Plaintiff after he reported a violation of law to an appropriate superior regarding Mr. Dixon's discriminatory practices and acts against Plaintiff and regarding Mr. Dixon's intoxication on the job and while acting as Plaintiff's employer.

118.   Plaintiff's exemplary record demonstrates Plaintiff's ability and qualifications to perform the positions for which Austin employed Plaintiff until the time of the fabricated pretextual set up to which the Defendants submitted Plaintiff and which formed the bases of their unlawful pretext to terminate Plaintiff.

119.   Defendants refused to rehire Plaintiff after he sought to be rehired. This conduct constitutes further unlawful retaliation against a public employee, which V.T.C.A., Texas Government Code § 554.002 prohibited and prohibits.

120.   In addition, Defendants herein failed to provide employees with proper notification of their rights under state law, in particular V.T.C.A., Texas Government Code § 554.009, by failing to post an appropriately worded sign in a prominent place in the workplace.

121. As a direct and proximate result of Defendants' actions, omissions and commissions, Plaintiff has been caused to suffer damages, for which he herein sues. Plaintiff also seeks an award of attorneys fees and costs associated with the bringing of this action. Plaintiff also seeks that under the applicable provisions of law that this Honorable Court grant him prospective equitable relief against Defendants to correct their discriminatory employment practices.

## Count IV: Violation of the Americans with Disabilities Act and the Rehabilitation Act of 1973 § 504

122. Plaintiff repleads, restates and incorporates the factual averments in ¶¶ 1 through 121 hereinabove pled, as well as, those hereinafter pled, as though originally pled herein this Count IV of this Compliant.

123. Defendants' conduct violated the terms of the ADA and the Rehabilitation Act of 1973 §504, in that Defendants did not accommodate Plaintiff's disabilities nor did they afford him adequate rehabilitation from those disabilities. Plaintiff was subject to wrongful termination, which constituted violations of federal and state law.

124. Defendants failed to attempt to provide reasonable accommodations for the Plaintiff and discriminated against him based on his disabilities.

125. Defendants by their actions discriminated against the Plaintiff in violation of the ADA and the Rehabilitation Act of 1973, 29 U.S.C.A. § 794.

126. As a direct and proximate result of Defendants' actions, omissions and commissions, Plaintiff has been caused to suffer damages, for which he herein sues. Plaintiff also seeks an award of attorneys fees and

costs associated with the bringing of this action. Plaintiff also seeks that under the applicable provisions of law that this Honorable Court grant him prospective equitable relief against Defendants to correct their discriminatory employment practices.

## Count V: Unconstitutional Hiring, Training, Supervision and Retention of Supervising Employees

127. Plaintiff repleads, restates and incorporates the factual averments in ¶¶ 1 through 126 hereinabove pled, as well as, those hereinafter pled, as though originally pled herein this Count V of this Compliant.

128. Austin's Mayor is a policy making official, as are members of Austin's City Council, who delegate policy making decisions to such as those acting in Austin's employ who are in a supervisory position and who are in a position to hire and terminate Austin Employees.

129. Those to whom the Austin officials aforesaid delegated such duties who were acting as policy–making officials of Austin in the course of their dealing over matters related to Plaintiff's employment aforesaid failed to control the behavior of subordinate supervisory employees, thereby ratifying the unreprimanded conduct and creating a defect of Austin and Public Works, as well as, HR departmental policies.

130. The Mayor and the others in a supervisory position over Plaintiff owed certain legal duties to Plaintiff under 42 U.S.C.A. § 1983 to establish appropriate policies and to make certain that those policies were carried forward in the adequate hiring, training, supervision and retention of any employee who was ever in a supervisory position over Plaintiff while Austin employed Plaintiff.

131. The Mayor and the others in a supervisory position over Plaintiff, Mr. Dixon, Mr. Cardona and Ms. Poole breached their duties to establish appropriate policies and to make certain that those policies were carried forward in the adequate hiring, training, supervision and retention of any employee who was ever in a supervisory position over Plaintiff while Austin employed Plaintiff.

132. The Mayor and the others in a supervisory position over Plaintiff, Mr. Cardona and Ms. Poole breached their duties to control Mr. Dixon's known propensity for improper use of his supervisory position over Plaintiff in his employment, even after Ms. Dixon's propensity to such misconduct was apparent, which is actionable under 42 U.S.C.A. § 1983.

133. Defendants acted unconstitutionally as aforesaid in their hiring, training, supervision and retention of the employees in a supervisory position over Plaintiff while Austin employed Plaintiff.

134. As a direct and proximate result of aforesaid legal duties on the part of the Mayor and the others in a supervisory position over Plaintiff owed to Plaintiff under 42 U.S.C.A. § 1983 to establish appropriate policies and to make certain that those policies were carried forward in the adequate hiring, training, supervision and retention of any employee who was ever in a supervisory position over Plaintiff while Austin employed Plaintiff, Plaintiff has suffered damages, for which he herein sues.

## Count VI: The Individual Defendants' Infliction of Severe Emotional Distress upon Plaintiff in Their Individual Capacities

135. Plaintiff repleads, restates and incorporates the factual averments in ¶¶ 1 through 134 hereinabove pled, as well as, those hereinafter pled, as though originally pled herein this Count VI of this Compliant.

136.  The conduct aforesaid of the individual Defendants, Mr. Dixon, Mr. Cardona and Ms. Poole caused directly and proximately Plaintiff to suffer severe emotional distress.

137.  The conduct aforesaid of the individual Defendants violated clearly established statutory and constitutional law of which a reasonable person would have known.

138.  The individual Defendants, Mr. Dixon, Mr. Cardona and Ms. Poole acted with deliberate indifference to Plaintiff's federal and state protected constitutional and statutory rights in their aforesaid individual misconduct.

139.  As a direct and proximate result of Defendants' misconduct aforesaid, Defendants, Mr. Dixon, Mr. Cardona and Ms. Poole are liable for any damages that Plaintiff suffered individually, jointly and severally in each of their own individual capacity.

140.  As a direct and proximate result of the individual Defendants, Mr. Dixon, Mr. Cardona and Ms. Poole's misconduct aforesaid, acting in deliberate indifference to Plaintiff's statutory or constitutional rights causing Plaintiff severe emotional distress, Plaintiff has suffered damages, for which he herein sues.

## Damages

141.  Plaintiff repleads, restates and incorporates the factual averments in ¶¶ 1 through 140 hereinabove pled, as well as, those hereinafter pled, as though originally pled herein this portion of this Compliant.

142.  Plaintiff sustained injuries for which he claims the following damages and seeks the following prospective equitable relief, as a direct and proximate result of Defendants' acts of commission and/or omission of described hereinabove:

a.    Compensatory damages, as allowable under law;

b.    Punitive or exemplary damages, as allowable under law;

c.    Reasonable and necessary Attorneys fees Plaintiff incurs or has incurred, as allowable under law;

d.    All reasonable and necessary Court costs Plaintiff incurs or has incurred, as allowable under law;

e.    Expert fees as the Court deems appropriate, as allowable under law;

f.    Any damages, compensatory or exemplary, all other prospective equitable relief, attorneys fees and Court costs, which might be allowable to Plaintiff under Title VII of the federal Civil Rights, the Americans with Disabilities Act, the Rehabilitation Act of 1973, 29 U.S.C.A. § 794, the Veterans Disability and Rehabilitation Act, 38 U.S.C.A. § 4323, as well as, the Texas Labor Code and the Texas Whistleblower Act or at common law;

g.    Back pay and compensation for lost benefits from the date that the Austin placed Plaintiff on administrative leave in April of 2007 and then unlawfully terminated Plaintiff's employment;

h.    Reinstatement in employment in his previous position.

WHEREFORE, THE PREMISES CONSIDERED, Plaintiff prays for the following relief: Plaintiff respectfully requests that the Defendants be summonsed to appear and answer, and that on trial of this action, the Court award plaintiff the following relief:

1.    Judgment against defendants, jointly and severally, for actual damages, including all back and future salary and pension benefits, sick leave, and vacation time, with interest as provided by law that are allowable under law;

2.     Punitive or exemplary damages, as allowable under law;

3.     All costs of court, as allowable under law;

4.     Pre-judgment and post-judgment interest in accordance with law on any damages awarded Plaintiff, as allowable under law;

5.     Reasonable attorney's fees and court costs, as allowable under law;

6.     Any other relief to which Plaintiff is entitled, as well as, such other and further relief to which the Plaintiff may be entitled at law or in equity, as this Court might deem meet, right and just, or which the nature of this cause might require.

Plaintiff prays for general relief.

Plaintiff demands a Jury Trial.

Respectfully submitted,

Donald T. Cheatham
Texas Bar No. 24029925
604 A West 9th Street
Austin, Texas  78701
(512) 494-1212 Telephone
(512)494-1213  Telecopy:
Attorney for Plaintiff.